^THOMPSON, J.,
delivered the opinion of the court.
In the year 1842, Isaac Gross, of the county of Bedford, died intestate, seized and possessed of a tract of land containing- four hundred and eight and a half acres, which descended to his children and grandchildren. These children and grandchildren together constituted nine stocks or shares, into which the land or its proceeds was divisible, the intestate having had nine children. Gustavus A. Wingfield and James T. Johnson qualified as his administrators. On the 10th February, 1843, Pearcy and wife, George Gross (son of Henry,) and John P. St. Clair and wife, a portion of the-heirs, filed their bill in the county court against the other heirs and the administrators, praying a sale of the land and division of the proceeds, basing their right to a decree for sale upon the two-fold ground that the share of each stock or distributee was not worth $300, and that a portion of the proceeds of sale was necessary for payment of debts or to eke out a deficiency in the personal assets to pay the debts. No objection was made to the sale by any one but George Gross, one of the heirs, who was made a defendant, and who filed an answer, resisting a decree for sale. His objection was overruled by the court, (and I think rightly overruled,) and on the 28th September, 1844, a decree was made for the sale of the land upon the terms of $50 in cash to defray expenses, and as to the residue, upon a credit of one, two and three years, the purchaser to give bond with personal security and the legal title to be retained as ultimate security. The administrators, Wingfield and Johnson, were appointed commissioners to sell. And in the same decree, in accordance with the prayer of the bill and the answer of the administrators, and preparatory to a final disposition of the proceeds of sale according to the rights of all parties interested, accounts were directed to be taken by a commissioner of the court of the advancements made by Isaac Gross in his lifetime to his distributees, of the debts due from said estate, and the ^amount of the personal estate, an account of the administration of the estate by Wingfield and Johnson, the administrators, and an account of the rents, issues and profits of the land since the death of Issac Gross and an ascertainment, and report to the court, of who had received and enjoyed the same and by consequence who was chargeable with the same.
Under this decree the commissioners advertised and sold the land on the 30th day of October, 1844, at which sale Marshall Gross became the purchaser, paid fifty dollars in cash and executed his three bonds with security for $1,113 52 each, making an aggregate of $3,390 56, or upwards of $8 per acre, estimating the tract at 408}^ acres.
The commissioners for the first time made their report to the county court on the 28th September, 1846, at which time the report of sale was virtually confirmed by the order directing them to withdraw the bonds executed for the purchase money of the land, collect the sums as they fell due, and report their proceedings in order to a final decree.
At the October court, 1847, (the 25th day of the month,) before the last bond was due, and without any report from the commissioners of his failure or refusal to pay, an order was made, on the motion of Henry Pearcy, to summon Marshall Gross, the purchaser, to the next court, to show cause, if any he could, why the land should not be re-sold, “it appearing to the court that *817 the said Marshall Gross has failed to comply with the terms of sale by paying the purchase money”' — but how this was made to appear to the court the order does not inform us. This order was returned “executed” by a deputy sheriff, without any affidavit of service, to the next succeeding court, the 22d November, 1847, and thereupon a decree for the re-sale of the land by the same commissioners who made the first sale, after three weeks’ notice, at six, twelve and eighteen months’ credit, was forthwith entered up.
Under this decree the re-sale was made by one of *the commissioners, J. E. Johnson, and the report thereof returned to the next January court, the 24th January, 1848. The other commissioner certifies, at the foot of the report, that he was not present at the sale, but authorized his co-commissioner, Mr. Johnson, to act for both, and concurred with him in the report. Pascal Smelser became the purchaser at this sale, at $6 10 per acre, making an aggregate of purchase money for the 40834 acres of $2,491 85, and executed his three bonds to the commissioners for $830 61 each, with Pascal Buford his security. The difference between the two sales, and consequently the loss by the last, either to Marshall Gross the purchaser, if he should be made to bear it, or the heirs and distributees, if thrown upon them, is upwards of $1,250, estimating interest upon the bonds for purchase monej' taken at the first sale, since due, and abating interest upon the bonds taken at the re-sale, and thereby reducing them to their cash value at the date of the re-sale.
To this report of re-sale, thus made and returned to January court, Marshall Gross filed or indorsed upon the report no formal or technical exception, but he presented his petition, verified by his affidavit, and upon his motion was admitted a party defendant in the cause. In this petition he resists the confirmation of the re-sale, and complains loudly of the summary proceedings by which it was sought to divest him of his purchase and subject him to a grievous sacrifice. He assigns, as an excuse for his failure to pay the purchase money for which he had given his bond and security, that he in the first instance had complied with the terms of sale, by paying the fifty dollars cash required and executing his bonds with security for the deferred payments; that the sale had been confirmed and he put inco possession; that, since the first sale, he had paid to the commissioners $387 50, or thereabouts, for which he held their receipts; that he had purchased of the heirs of Isaac Gross 434 shares, or one half of the estate, there being nine stocks; that by this purchase he became *entitled to a credit on his bonds for one half of the net proceeds of the purchase money thht should remain for distribution after the settlement of the various accounts directed by the first decree; and that until these accounts were settled, there could be no distribution of the proceeds, nor could it be ascertained what he ought to pay, as it would not be just to require him to pay up the whole purchase money, when he was the owner of half, if not more, upon the adjustment of the account of advancements. Notwithstanding this petition and the admission of the petitioner as a party defendant, the county court at the same January term, 1848, enter this decree: ‘ ‘ This cause came on again to be heard upon the papers formerly read and the report of Gustavus A. Wingfield and James If. Johnson, commissioners appointed by a decree of the court at the November term, 1847, to re-sell the land in the bill and proceedings mentioned, to which report there was no objection, and was argued by counsel: On consideration whereof, the court, after hearing the counsel of Marshall Gross in opposition thereto, doth approve and confirm said report, and doth adjudge, order and decree, that the same commissioners do withdraw the bonds executed for the purchase money of said land, and collect the same as they respectively fall due, and report their proceedings to this court; and the court doth further adjudge, order and decree, that the sheriff of this county do go with the said Paschal Smelser, the purchaser, and put him in possession of the land and premises sold to him by the said commissioners, and the sheriff is authorized, &c., &c.” Prom this decree an appeal was taken to the Circuit Superior Court of Bedford, and the decree of the county court affirmed by that court, on the 11th September, 1848, and from the decree of affirmance, an appeal and supersedeas have been granted by the Court of Appeals.
The errors alleged in the proceedings and decree of the county court affirmed by the circuit superior court, are:
*1. That the court was not warranted, upon a rule to shew cause, to decree against the purchaser a sale of his land for the purchase money in arrear and unpaid; that the mode of compelling performance of decrees is either by process of contempt, sequestration, or by execution as upon a judgment; that a party upon the record may be proceeded against by sequestration, but that a purchaser under a decree, not a party on the record, cannot be proceeded against to a sequestration; and for authority for these propositions, Jeremy’s Eq. 300; Smith’s Ch’y Practice, 429, 432-33, 440, 441, and Robinson’s Practice, (old edition) pp. 387, 411, are cited. But if the court had the power to decree a sale, upon mere summons to shew cause and motion, it was not warranted under the proceedings in this cause to do so. There was no evidence in the record that the appellant had reasonable and sufficient notice of the motion. It only appears, that the summons had been executed, (and he might have added by the unsworn return of a deputy sheriff, which was not sufficient proof of service of such process as the law' then stood). He did not appear to except to the sufficiency of the notice, and the record should show that it was reasonable to jus *818 tify the court in proceeding to decree against him. There was no evidence in the record that the purchase money was in arrear, upon which to predicate such an order. There was not even the evidence of the commissioners’ certificate. It was not only necessary that there should have been evidence that the purchase money was in arrear and -unpaid, but it was the duty of the court to have ascertained and'adjudged by its decree how much had been paid and how much was in arrear.
II. Because the appellant was not, as he ought to have been, heard and relieved upon the matters set forth in his petition.
III. Because the sale was- invalid, and ought not to have been confirmed, because made in the absence of one of the commissioners; his subsequent approval could not give it validity.
*1 confess, the question raised in the first assignment of error, as to the power of a court of equity to proceed in a summary way by rule to shew cause to re-sell the land of a purchaser,- who has complied with the terms of sale, by making the cash payment, given bond and security for the deferred payments, whose purchase has been confirmed and he put into possession, is to me a novel one. I have met with no such case in my practice at the bar or my experience on the bench. It is certainly true, that the ordinary means of compelling performance of decrees and orders of a court of chancery are process of contempt, sequestration and execution as upon judgments at law; but these are not the only means: Cases may and do often-occur where a resort to such a proceeding as this would be proper. Suppose a purchaser fails and refuses to comply with the terms of sale by paying cash, if it be a sale for cash, or by giving bond and security, if it be a- sa le upon time with the requisition of bond and security, and the fact of failure and refusal be reported to the court by the commissioner of sale. The court may either proceed by attachment, or by- a rule, to shew cause why the land should not be re-sold at the peril of the purchaser, holding him responsible for the deficiency. Such a proceeding as this substantially accords with the English practice, where it seems sales are in the general, if not always, for cash, and where, in lieu of any personal security, the purchaser make a deposit regulated b.y and in proportion to the price given, by way of guaranty that he will complete his purchase, and after confirmation of the report of sale, pay the purchase money. Then, if the purchaser refuses or neglects to complete his purchase, and is supposed to be a responsible person, the solicitor of the party conducting the sale should procure the master’s report and the orders confirming it nisi and' absolutely, and may move that within a given time he pay his purchase money into court, and if he fails, without sufficient ground of objection founded upon defect of *title or for other causes, an attachment would issue. If the purchaser be supposed to be incompetent in point of means, the vendors may move, on notice, that he be discharged, and that the estate be re-sold, or as is now the more usual and eligible course, to obtain an order, not that the purchaser be discharged, but that the estate be re-sold, and that he may pay the expenses arising from his non-completion of the purchase, the expenses of the application to the court and of the re-sale, and any deficiency in price on the re-sale. See Dart on Vendors, ch. 19, p. 571.
I have said, that according to my understanding of our practice, the purchaser may be compelled to comply with the terms of sale and complete his purchase, by paying cash, if it be a cash sale, or giving bond and security, if it be on time, either by process of contempt or by a rule to show cause why the land should not be re-sold, and I am not prepared to say that there might not be cases, where bond and security had been given, the legal title being retained by the court as ultimate security, in which a summary proceeding like this would not be justifiable. As, for instance, where the exigencies of the case required a speedy collection of the proceeds of sale, where the purchaser and his sureties had been prosecuted at law to insolvency, or in the absence of any suit were proved to be notoriously insolvent. In such a case, I can see no good reason why the court should not have power to proceed by rule against the purchaser and his sureties to decree a re-sale, rather than to resort to the more tardy and tedious proceeding of an original bill to enforce the lien by foreclosure and sale. I must, however, confess, no matter how reasonable such a practice may seem to me in the case supposed, its propriety is at least very questionable and doubtful, tested by the usages and practice of courts of equity in Virginia.
But if in the case supposed such a proceeding were ever so well established, the case under consideration is wholly unlike it. Here there is no suggestion, much
*less proof of the insolvency of the purchaser or his sureties, no necessity for a speedy collection of the proceeds of sale. On the contrary, so far as any judgment can. be formed from what appears on the record, a reason appears why the proceeds should not be called in, (being secured in the hands of the purchaser by a lien on the land as well as personal security,) until the accounts directed by the original decree were taken and reported, without which the proceeds could not be distributed, and this the more especially, if it be true, as alleged in the petition of the purchaser, that he is the owner of one-half of these proceeds. Notwithstanding this state of things, it would have been competent for the court, and perhaps proper, if invoked so to do by any of the parties in interest, to have ordered the collection of the bonds by suit, if not paid without, and so to have driven the purchaser to an injunction upon the grounds alleged in his petition against the confirmation of the re-sale; but a summary *819 proceeding to re-sell, under the state of circumstances which existed in this case, was wholly unwarrantable. Its result and consequence, if sanctioned by this court, is to visit, either upon the purchaser or his securities, or the heirs, a most ruinous and gratuitous sacrifice. But upon whom the burden was to fall is not easily to be gathered from the record, whether it was contemplated to hold the purchaser and his sureties responsible for the deficiency, or to declare the purchaser’s rights under the first sale forfeited and abandoned, and throw the sacrifice upon the heirs.
Not only was this summary proceeding improperly originated by the court, because not a proper case for such a proceeding, and it -was without the preliminaries of a report from the commissioner, or other evidence of default on the part of the purchaser, or notice of such proceeding; but the subsequent proceedings are obnoxious to most, if not all, of the objections taken to it in the 2d and 3d assignment of errors —such as want of sufficient legal proof of service of the rule; a sale by *one commissioner, when two were appointed ; the failure to sustain the exception to and to set aside the sale upon the filing of the petition; and, in addition to the errors and irregularities specifically assigned by the appellant, a fatal one, not taken in the petition and assignment of errors, is to be found in the details of the decree of re-sale. The decree prescribed no time, gave no day to the purchaser to redeem, and thereby avert the sacrifice of his estate, by paying up the amount of purchase-money due. Kyle v. Tate’s adm’r, 6 Grat. 44.
For these reasons, I am of opinion that the decrees of both courts should be reversed ; that of the county court for the errors and irregularities set forth in this •opinion, and that of the circuit superior court for affirming it. That the re-sale, the decree of the county court under which it was made, and the rule to show cause upon which the decree was founded, should be set aside, annulled and rescinded, and the cause remanded to the Circuit Court of Bedford, to be further proceeded in to final decree, in conformity with the opinion and decree of this court.
The other judges concurred.
DECREE.
The court is of opinion, that the decree -of the Circuit Superior Court of Bedford, affirming that of the county court, is erroneous. It is therefore decreed and ordered, that the same be reversed and annulled, and that the appellees do pay unto the appellant his costs by him expended in the prosecution -of his appeal aforesaid here. And this court, proceeding to pronounce such decree as the circuit superior court should have pronounced, it is further decreed and ordered, that the decree of the county court, brought up by appeal to the said ¡circuit superior court, be reversed and annulled, the rule to show cause upon which it was founded rescinded, and the re-sale %nd report thereof made by Commissioners Wingfield and Johnson under it set aside, and that the appellees do pay unto the appellant his costs by him expended in the prosecution of his appeal in the said circuit superior court. And it is ordered, that the cause be remanded to the Circuit Court of Bedford county, to be retained and docketed there for further proceedings to be had therein, in order to a final decree in conformity with the opinion and decree of this court, with instructions to that court to give the appellant leave to file his answer, (having been admitted a party defendant,) setting forth and putting in issue his pretensions, to cause all proper accounts to be taken and reported, as well as those already ordered in the county court, as any alterations therein, additions thereto or modifications thereof as may be deemed proper by the court or suggested by the parties; to cause the proceeds of sale to be collected and brought into court for distribution, at such time and in such manner as in its discretion may be deemed proper; and finally to distribute the net proceeds remaining after the payment of debts, if any be chargeable thereupon, according to the several and respective rights of the parties.